**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

ALEXANDER ANASTASSOPOULOS, by his parent and
natural guardian KATHRYN ANASTASSOPOULOS,

          Plaintiff,

v.

HOSPITAL FOR SPECIAL SURGERY; FRANK
CORDASCO; and DANIEL GREEN,

          Defendants.

-------------------------------------------------------------

**COMPLAINT**

**JURY DEMANDED HEREON**

## INTRODUCTION

1.  This is an action for actual damages, treble damages, punitive damages, declaratory judgment, injunctive relief, attorney's fees and costs brought on behalf of Alexander Anastassopoulos, a minor, by his parent and natural guardian Kathryn Anastassopoulos, seeking redress for misconduct relating to Defendants' advertising and performance of certain surgical procedures.

2.  Specifically, as set forth below, Defendants – a hospital in New York and two of its surgeons –  are liable for medical malpractice, lack of informed consent, negligent hiring and supervision, violation of New York General Business Law §§ 349 and  350, and fraud.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

4.  With regard to 28 U.S.C. § 1332, as set forth below, the parties are completely diverse and the amount in controversy exceeds $75,000.00.

5.  The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201 and § 2202.

6.  This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.  Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and Defendants HSS, Cordasco and Green maintain offices, transact business, and are otherwise found in this district.

**THE PARTIES**

8.  Plaintiff, Alexander Anastassopoulos ("Plaintiff" or "Alex"), is a minor child who has, at all relevant times, lived with his parents in Montogomery County, Maryland.

9.  At all pertinent times hereinafter mentioned, HOSPITAL FOR SPECIAL SURGERY (hereinafter "HSS") was a professional corporation that owned, operated, maintained, controlled, and managed as a Hospital pursuant to the laws of the State of New York for the care of the sick, located at  535 East 70th Street, New York, New York, which provided personnel, including doctors, nurses, and others for the care and treatment of its patients, and which held itself out to the public as furnishing treatment facilities where patients, including the Plaintiff, Alex Anastassopoulos , could be treated for various ailments.

10. At all pertinent times hereinafter mentioned, Defendant, Frank Cordasco (hereinafter "Cordasco") was a physician duly licensed to practice medicine in the State of New York, and residing in New York.

11. At all pertinent times hereinafter mentioned,  Cordasco was an owner, shareholder, employee, independent contractor and/or agent of  HSS.

12. At all pertinent times hereinafter mentioned, Defendant Daniel Green (hereinafter "Green") was a physician duly licensed to practice medicine in the State of New York, and residing in New York.

13. At all pertinent times hereinafter mentioned, Green was an owner, shareholder, employee, independent contractor and/or agent of HSS.

14. At all times hereinafter mentioned HSS furnished, provided, used and employed at said medical facility physicians, technicians, nurses, aides, staff members, and others, who were authorized, retained, or permitted by HSS to order, recommend, request, advise, perform, render or provide medical examinations, evaluations, care, diagnoses, treatments, procedures, tests, studies, services, and/or advice, for and to patients at the said office.

15. At all pertinent times hereinafter mentioned, HSS, Green and Cordasco stood in such a relationship with each other in their care and treatment of Plaintiff as to make each Defendant liable for the acts and omissions of the other.

## **FACTS**

16. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

17. On or about October 2, 2014, Plaintiff – then 11 years old -- suffered a knee injury while playing football.

18. At that time, Plaintiff's parents took him to an urgent care center where they were told it was a sprain.

19. After resting his knee, Plaintiff returned to sports activity, at which time his knee injury continued to bother him, causing pain and buckling.

20. Plaintiff's parents then took him to a local orthodedic surgeon who determined that he had a torn ACL.

21. Plaintiff's parents then visited an orthopedic surgeon at DC Children's hospital.

22. That physician, Dr. Friend, explained that he did not perform ACL surgeries on children younger than age 12.

23. Plaintiff's parents, Andreas and Kathryn Anastassopoulos researched Alex's injury online and decided to bring Alex to HSS based on HSS's public declarations that had developed and was expert in a technique for performing ACL reconstruction on children called "All-Inside, All-Epiphyseal ACL Reconstruction" or "AE" and, in particular, the representation that unlike other procedures, AE posed no risk of growth plate injury to children undergoing the procedure.

24. Specifically, Alex's parents based their decision to bring Alex to HSS, Green and Cordasco based upon two articles on HSS's website.

25. The first, is titled "ACL Reconstruction Technique Improves Outcomes in Pediatric Patients" and is attached hereto as Exhibit A.

26.   This first article, after discussing the risk of growth plate damage and other downsides

of other procedures, states, inter alia, that

> Advances in technology, instrumentation and techniques are now
> available which allow surgeons to perform the AE reconstruction
> **without risk of injury to the growth plate**. These procedures are
> more technically demanding and are available at only a few centers
> around the country including HSS.

Exhibit A, attached hereto (emphasis added).

27.    The article goes on to state:

> In the AE, surgeons mimic the adult surgery, but the ligament is
> only attached to the epiphysis and **does not cross into the growth
> plate**.

*Id.*  (emphasis added).

28. This first article touts Cordasco and Green's research on AE.

29. The second article, attached hereto as <u>Exhibit B</u> is titled "ACL Research Advances

Treatment" and states, *inter alia*,

> Performing ACL reconstruction on children is difficult, because
> the typical adult type reconstruction can cause damage to open
> growth plates, potentially causing uneven limb lengths or
> deformities. Thus, for many years surgeons postponed ACL
> surgery until children stopped growing, or used surgical techniques
> that were not anatomically accurate.
>
> "Conservative treatment means telling a nine year old not to play
> sports for the rest of his or her childhood. That is a poor option for
> most children and their families," says Dr. Green.
>
> **The AE technique is similar to adult ACL surgery but uses
> new technology and  X-rays to completely avoid the growth
> plate**. It is performed arthroscopically and results in an anatomic
> ACL reconstruction. It is one of several techniques performed
> successfully at HSS to repair ACL tears in children.

<u>Exhibit B</u>, attached hereto (emphasis added)

30. This second article again touts Green and Cordasco's expertise, stating that AE "was developed at HSS" by Green and Cordasco.  Id.

31. Based on HSS's representations regarding the benefits of AE and, in particular, HSS's statements that the procedure would "completely avoid" Alex's growth plate and was "without risk of injury to" his "growth plate.", Alex's parents contacted HSS, provided HSS with Alex's medical records, and subsequently spoke with Cordasco by phone on or about October 20, 2014.

32. At that time, Cordasco agreed Alex tore his ACL and was a candidate for the procedure and suggested that Alex and Kathryn set up an in-person appointment.

33. On or about October 28, 2014, Alex and his parents travelled from Maryland to New York and met with Cordasco and Green at HSS for a consultation and if all went well, surgery the following day.

34. At that meeting, Green and Cordasco diagnosed Alex with a complete ACL tear, peripheral lateral meniscus tear and transchondral fractures to his right knee, noted for their own records that Alex's "radiographs show wide growth plate", and strongly recommended the AE procedure.

35. Following Green and Cordasco's recommendations and based upon Defendants' written representations that AE was without risk of injury to the growth plate, Alex's parents consented to Alex undergoing AE performed by Green and Cordasco.

36. Green and Cordasco, in their discussions with Alex's parents on October 28, 2014 did not discuss the risk that their procedure could, in fact, damage Alex's growth plate, leaving

him permanently injured and requiring multiple additional surgeries to attempt to mitigate the damage inflicted.

37. Green and Cardasco recommended that Alex have the AE surgery as soon as possible.

38. Alex underwent AE surgery to his right knee the following day, October 29, 2014, which was possible because Green and Cardasco had already scheduled it.

39. The surgery was performed by Green and Cordasco.

40. After several months, it became clear that Alex's post-surgical recovery was compromised.

41. Specifically although, during multiple post-operative vists and consults, Green and Cordasco repeatedly stated that Alex was "doing quite well", Alex's range of movement was unusually slow to return and has, to date, never fully returned; his right knee was noticeably "knocked", (i.e. his right knee was angulated/bent inward, and exhibited "valgus"); and his legs were no longer the same length.

42. Kathryn repeatedly inquired of Green and Cordasco regarding these symptoms and they repeatedly brushed off, were condescending, and de-emphasized her concerns.

43. Indeed, although Alex's medical imaging and radiology notes make clear that Defendants were aware from at least early spring 2015 that Green and Cordasco had injured Alex's growth plate while performing the surgery, it was not until May 2016 that Green and Cordasco acknowledged in a straightforward manner to Alex's parents that there was a significant injury to Alex's growth plate.

44. This acknowledgment in May 2016 occurred at a meeting requested by Plaintiff's mother, Kathryn, who was distraught that – despite Cordasco and Green's assurances – she could see obvious, visual deformity/angulation/valgus in Alex's right leg.

45. Cordasco and Green agreed to meet Alex and Alex's parents as soon as possible to appease them and scheduled a CT scan at that time.

46. Kathryn was particularly concerned not only by the discrepancy between the overly positive post-operative assessments  previously provided by Cordasco and Green and this obvious damage, but also by the discrepancies between Green and Cordasco's oral representations to Plaintiff's parents regarding the surgery's outcome and Alex's prognosis on the one hand, and the radiology notes and other internal HSS records that the parents, as a result of their increasing concern and Alex's lack of recovery had ordered and reviewed, on the other.

47. Even when Green and Cordasco did finally acknowledge the growth plate damage, they understated its impact.

48. Specifically, and without limitation, although Alex's medical records indicate that Green and Cordasco were aware that the growth plate damage was resulting in a growth arrest (causing loss of length length, valgus/knocked knee, and lack of extension from abnormal bone growth as seen on the CT scan) that would likely reduce his height by 3-4 centimeters, i.e. 1.18 to 1.57 inches, Green and Cordasco understated this figure in their discussions with Kathryn regarding the growth plate damage and options for dealing with same, stating that the reduced height would amount to approximately 1 inch (2.58 cm).

49. On other occasions, Green and Cordasco understated the extent of the angulation/valgas of Alex's right leg and overstated his range of motion. After repeated concerns about lack of extension, Green and Cordasco kept repeating to have Alex do his exercises.

50. Following the May 2016 consult, at Green and Cordasco's urging to let Alex have a normal childhood, Alex then underwent a second, surgery on our about May 19, 2016 to mititage further damage caused by the first surgery and halt further growth of Alex's distal fermur.

51. The procedure, known as bilateral epiphysiodesis, involved, *inter alia*, drilling and installation of two large screws, each several inches long, into each of  in Alex's  knees.

52. Had Alex's parents been made aware of the damage sooner, they would have had more time to seek second opinions on alternative procedures/approaches and our sought out other surgeons.  The wait list for other specialists was three months.

53. Alex was under Defendants' continuous care through the time of the second (corrective) surgery, in May 2016.

54. Following the surgery performed by Defendants in May 2016, Alex has been under separate care for follow-up.

55. Alex has continued to suffer severe complications stemming from Cordasco and Green's acts and omissions, and underwent a third corrective surgery in February 2017.

56. Alex has continued to be seen by a physical therapist into 2017 as a result of Cordasco's and Green's surgeries.

57. This third surgery was performed at a facility other than HSS by surgeons other than Cordasco and Green, as Plaintiff's parents had by that time completely lost faith in HSS, Cordasco and Green's abilities and truthfulness.

58. As a result of Green and Cordasco's actions,Alex's right leg remains angulated/bent inward, he continues not to have full range of movement, he cannot fully extend his right leg, and his legs are of slightly different length.

59. The 4 large screws inserted into his legs as part of the second surgery have not yet been removed.

60. Plaintiff's injuries persist despite extensive physical therapy over the course of several years.

61. Alex will require a minimum of two more surgeries to remove the screws and staple, and even then, his leg will be permanently damaged as a result of Defendant's acts and omissions.

62. As a result of the Defendants' acts and omissions as set forth herein, he developed severe pain, swelling, injury to his growth plates and his right leg, uneven growth in his right leg, deformity (including legs of uneven length, and a right leg that is angulated, cannot fully extend, and is otherwise damaged) and the need for further medical care, treatment and surgery.

63. As a result of the Defendants' acts and omissions as set forth herein, Alex has been rendered sick, sore, lame, and disabled, sustained severe emotional shock and mental anguish, and emotional upset, and a decrease in his enjoyment of life.

64. As a result of the Defendants' acts and omissions as set forth herein, Plaintiff, has incurred hospital and medical expenses in an effort to be cured of such injuries.

65. As a result of the Defendants' acts and omissions as set forth herein, Alex will not reach his full height.

66. As a result of the Defendants' acts and omissions as set forth herein, Alex is entitled to an amount in damages far exceeding the amount in controversy threshold set forth in 28 U.S.C. § 1332.

67. By reason of the above, Plaintiff brings this action for his conscious pain, suffering, loss of enjoyment of life, and economic damages, both general and special.

68. By reason of the above, the Defendants are jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR, specifically CPLR 1602(2)(iv) in that Defendants' liability arises by reason of a non-delegable duty or by reason of respondeat superior; and CPLR 1602(7) in that Defendants acted with reckless disregard for safety of others.

## FIRST CAUSE OF ACTION
## <u>MEDICAL MALPRACTICE</u>

69. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

70. Defendants obtained the consent of the Plaintiff to perform AE by telling Plaintiff's parents that there was no risk of injury to the Plaintiff's growth plate.

71. Defendants did not possess the requisite skill to perform the October 29, 2014 procedure.

72. Defendants failed to use proper care and technique when performing the above procedure, causing the Plaintiff to have a poor surgical outcome.

73. Defendants were negligent in their pre-operative, operative and post-operative care of the Plaintiff necessitating additional surgery that is continuous and ongoing and that, even in the best case scenario, will not fully reverse the damage inflicted by Defendants.

74. The aforesaid treatments and services were rendered by Defendants performing medical services in a manner that was careless, unskillfull, negligent, and not in accordance with accepted standards of medical care, treatment, and services in the community, and such acts and/or omissions are subject to the doctrine of res ipsa loquitur.

75. The foregoing injuries and damages to Plaintiff, were actually and proximately caused by virtue of the, lack of skill, negligence, and malpractice on the part of the Defendants, without any negligence on the part of Plaintiff

76. By reason of the above, Plaintiff suffered all of the injuries set forth in ¶¶ 57-64.

77. By reason of the foregoing, Plaintiff is entitled to actual damages, punitive damages and costs.

## SECOND CAUSE OF ACTION
## LACK OF INFORMED CONSENT

78. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

79. Defendants, their agents, servants and employees, failed to inform Plaintiff of the reasonably foreseeable risks and benefits of, and alternatives to, the treatment proposed and rendered, which would have been disclosed by a reasonable medical practitioner in

similar circumstances, in consequence of which Defendants failed to obtain an informed

consent thereto.

80. A reasonably prudent person in the position of Plaintiff would not have undergone the

treatment rendered herein if he had been fully informed.

81. Specifically, Defendants informed the Plaintiff that the surgery selected carried no risks

to the Plaintiff's growth plates, and the Plaintiff only went forward with the surgery

because of this fact.

82. As previously set forth, Defendants published articles on the HSS website that claimed

that AE posed no risk of injury to a child's growth plate and promoted AE on this basis.

83. To wit, Defendants stated as follows:

> Advances in technology, instrumentation and techniques are now
> available which allow surgeons to perform the AE reconstruction
> **without risk of injury to the growth plate**. These procedures are
> more technically demanding and are available at only a few centers
> around the country including HSS.

> . . . In the AE, surgeons mimic the adult surgery, but the ligament
> is only attached to the epiphysis and **does not cross into the
> growth plate**.
>  (contained on the HSS website and published on July 13, 2012,
> under the title "ACL CONSTRUCTION TECHNIQUE
> IMPROVES OUTCOMES IN PEDIATRIC PATIENTS").

Exhibit A (emphasis added).

84. Defendants also stated as follows:

> While the standard adult method of ACL reconstruction is
> performed successfully on older teenagers, there are a variety of
> options available to treat young children with ACL tears. One

option that was developed at HSS by pediatric orthopedic surgeon Daniel W. Green, MD, and orthopedic surgeon Frank A. Cordasco, MD, is called the All-Inside, All-Epiphyseal Reconstruction (AE). A recent study published in The American Journal of Sports Medicine found that the AE allows young athletes to return safely to sport.

Performing ACL reconstruction on children is difficult, because the typical adult-type reconstruction can cause damage to open growth plates, potentially causing uneven limb lengths or deformities. Thus, for many years surgeons postponed ACL surgery until children stopped growing, or used surgical techniques that were not anatomically accurate.

"Conservative treatment means telling a nine-year-old not to play sports for the rest of his or her childhood. That is a poor option for most children and their families," says Dr. Green.

The AE technique is similar to adult ACL surgery but uses new technology and X-rays **to completely avoid the growth plate.** It is performed arthroscopically and results in an anatomic ACL reconstruction. It is one of several techniques performed successfully at HSS to repair ACL tears in children.

The investigators compared knee stress and stability between the two surgical techniques, finding that the AE allowed knees to withhold stresses better at a running angle. "This is important because most field and court sports involve knee function close to this position. Also, the AE does not require an open incision, reducing the risk of soft tissue trauma," says Dr. Cordasco.

Exhibit B (emphasis added).

85. The information given by the Defendants in their informed consent discussions with the Plaintiff, as further outlined in the aforementioned articles, evidences the reason why the Plaintiff agreed to go forward with the procedure, namely, because there was no risk to the Plaintiff's growth plates.

86. Thus, the informed consent discussions herein is an actual and proximate cause of the injuries, conditions, and disabilities for which recovery is sought.

87. By reason of the above, Plaintiff suffered all of the injuries set forth in ¶¶ 58-67.

88. By reason of the foregoing, Plaintiff is entitled to actual damages, punitive damages and costs.

## THIRD CAUSE OF ACTION
## <u>NEGLIGENT HIRING AND SUPERVISION</u>

89. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

90. Defendant, HSS was negligent in hiring and supervising medical personnel, including Cordasco and Green, who were careless, unskillful, negligent, and who did not possess the requisite knowledge and skill of a medical professional in the community, and who failed to ensure the safety of patients, including Plaintiff.

91. By reason of the above, Plaintiff suffered all of the injuries set forth in ¶¶ 58-67.

92. By reason of the foregoing, Plaintiff is entitled to actual damages, punitive damages and costs.

## FOURTH CAUSE OF ACTION
## <u>VIOLATION OF NYGBL § 349</u>

93. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

94. Each of the deceptive acts and practices set forth above, constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law, including common law.

95. These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

96. Specifically, the deceptive acts and practices occurred in the course of Defendants' provision of medical services, in New York, to Plaintiff.

97. Defendants' deceptive acts and practices were consumer-orientated.

98. Defendants' conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public.

99. To the contrary, Defendants' misrepresentations regarding the risks associated with their AE procedure were demonstrably and intentionally made by Defendants to the public at large, e.g. via HSS' website and the articles (Exhibits A and B) published on that website, and Defendants regularly and repeatedly use these articles to attract minor patients who are, understandably, drawn by the claim that AE poses no risk of growth plate injury to children.

100.    The deceptive conduct of which Plaintiff is a victim is highly capable of repetition and at the time of the filing of the instant litigation was in fact continuing and recurring in nature.

101.    Defendants' willfully and knowingly engage in the deceptive tactics set forth herein, in bad faith, on a regular and recurring basis.

102.    Tellingly, despite having injured Alex's growth plate in the course of an AE procedure when he was eleven years old, Defendants have not amended their demonstrably false public representation that AE poses no risk of growth plate injury to children.

103.    Defendants' conduct and statements were materially misleading.

104.      As a result of these violations of NYGBL §349, Plaintiff suffered, inter alia,

actual damages, as set forth in ¶¶ 58-67.

105.      For these reasons, Plaintiff is entitled to actual damages, an injunction of the

deceptive practices set forth herein (including inter alia, removal of the false online

statements made by Defendants regarding the lack of risk to growth plate injury inherent

in AE surgery, and full disclosure of same in all communications with potential AE

recipients), three times actual damages up to $1000, punitive damages, costs and

reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF § 350 (UNLAWFUL FALSE ADVERTISING)**

106.      Plaintiff repeats and re-alleges and incorporates by reference the foregoing

paragraphs.

107.      HSS's false representations, in writing, regarding the supposed lack of risk of

growth plate damage and other complications posed by AE, as set forth above and in the

exhibits attached hereto, constitute violations of NYGBL § 350 independent of whether

these representations violated any other state or federal law or gave rise to any other

common law violation.

108.      With regard to false written representations, Plaintiff refers, inter alia, to the

online promotion articles provided to Plaintiff and the public at large.

109.      These misrepresentations, which were made prior to surgery and for the purpose

of inducing Plaintiff and other children with ACL injuries to hire Defendants to perform

AE surgery, constitute false advertising pursuant to NYGLB § 350, which defines "false advertising" to mean:

> advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

110.    Defendants' false advertising was committed in the conduct of business, trade, commerce or the furnishing of a service in this state, i.e. in the provision of medical services in New York.

111.    Defendants' false advertising was done knowingly and willfully and committed in bad faith.

112.     As a result of these violations of NYGBL §350, Plaintiff suffered actual damages as set forth in ¶¶ 58-67, above.

113.    For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages, three times the actual damages up to $10,000, punitive damages, costs and reasonable attorney's fees.

**SIXTH CAUSE OF ACTION**
**FRAUD**

114.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

115.     As set forth above, Defendants made intentional, material misrepresentations and omissions regarding the risks posed by the AE procedure, and made further intentional material misrepresentations and omissions regarding the outcome of the surgery after injuring the growth plate on Plaintiff's right leg.

116.     Plaintiff's parents justifiably relied upon each of the aforesaid misrepresentations of material facts, individually and collectively, as a result of which he sustained losses and damages.

117.     Indeed, Defendants' fraudulent misrepresentations regarding the supposed lack of such risk are the central thrust of their promotion of AE as a surgical method suitable for childrent and superior to other methods available to children with ACL injuries.

118.     Had Plaintiff's parents known of the true risks the AE procedure touted by Defendants posed to Alex, particularly with regard to growth plate injury, they would not have consented to Alex undergoing the surgery.

119.     By reason of the foregoing, Plaintiff is entitled to actual damages as set forth in ¶¶ 58-67.

120.     Because HSS's fraudulent conduct was willful, malicious and calculated, Alexander Anasstapoulos is also entitled to punitive damages, as well as costs.

WHEREFORE Alexander Anasstapoulos respectfully demands judgment against Defendants as follows:

a.   On COUNT I,  Medical Malpractice, judgment against all Defendants, actual damages, punitive damages, and costs;

b.  On COUNT II, Lack of Informed Consent, judgment against all Defendants, actual damages, punitive damages, and costs;

c.  On COUNT III,  Negligent Hiring, judgment against all Defendants, actual damages, punitive damages, and costs;

d.  On COUNT IV, NYGBL § 349, judgment against all Defendants, actual damages, three times the actual damages up to $1000, punitive damages, declaratory judgment that Defendants' acts and practices are deceptive, injunctive relief, costs and attorney's fees;

e.  On COUNT V, NYGBL § 350, judgment against all Defendants, actual damages, three times the actual damages up to $10,000, punitive damages, declaratory judgment that Defendants' advertisements are deceptive, injunctive relief (enjoining the false advertising practices described above), costs and attorney's fees.

f.  On COUNT VI, FRAUD, judgment against all Defendants, actual damages, punitive damages, and costs;

g.  Together with such other relief as law and equity may provide, punitive damages, declaratory judgment, attorneys' fees, costs and disbursements of this action and such other and further relief as this forum deems just and proper.

*[rest of page intentionally left blank]*

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated:  June 8, 2017

Respectfully Submitted,

*/s/Daniel A. Schlanger*
Daniel A. Schlanger
Kakalec & Schlanger, LLP
85 Broad Street, 18th Floor
New York, New York 10004
T:  212.500.6114
F:  646.612.7996
dschlanger@kakalec-schlanger.com

*/s/Allen V. Koss*
Allen V. Koss
Koss & Sconfeld, LLP
90 John Street, Suite 408
New York, New York 10038
T: 212-796-8915
F: 212-401-4757
avk@kandsllp.com

*Attorneys for Plaintiff*